**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

CAREER COLLEGES
& SCHOOLS OF TEXAS,

              Plaintiff,

v.

UNITED STATES DEPARTMENT OF
EDUCATION; MIGUEL CARDONA,
in his official capacity as the Secretary
of Education,

            Defendants.

Case No.:   4:23-cv-00206-P

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR TRANSFER**

**TABLE OF CONTENTS**

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Argument ................................................................................................................... 2

      I.      Venue is proper in the Northern District of Texas ................................. 3

            A.     Venue is proper where a regulatory action imposes its burdens ............... 4

            B.     Defendants' arguments lack merit. ........................................................ 7

      II.     Transfer for convenience under § 1404(a) is unwarranted. ................................. 13

Conclusion ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Carpet Mills v. Gunny Corp.*,
    649 F.2d 1056 (5th Cir. 1981) ........................................................................10

*Ambraco, Inc. v. Bossclip B.V.*,
    570 F.3d 233 (5th Cir. 2009) ...........................................................................8

*Andrade v. Chojnacki*,
    934 F. Supp. 817 (S.D. Tex. 1996) ................................................................4

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) .....................................................................13, 14

*Experian Info. Sols., Inc. v. F.T.C.*,
    No. 3:00-CV-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001) ...............11, 12

*Farmland Dairies v. McGuire*,
    771 F. Supp. 80 (S.D.N.Y. 1991) ...................................................................1

*Garcia v. Acosta*,
    393 F. Supp. 3d 93 (D.D.C. 2019) ................................................................10

*Globe Glass & Mirror Co. v. Brown*,
    888 F. Supp. 768 (E.D. La. 1995) .................................................................9

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005) ........................................................................................4

*Int'l Cotton Mktg., Inc. v. Commodity Credit Corp.*,
    No. 5:08-CV-159-C, 2009 WL 10705345 (N.D. Tex. Feb. 4, 2009) ..............3

*Int'l Truck & Engine Corp. v. Quintana*,
    259 F. Supp. 2d 553 (N.D. Tex. 2003) .........................................................4

*Nobre ex rel. K.M.C. v. La. Dep't of Pub. Safety*,
    935 F.3d 437 (5th Cir. 2019) .........................................................................7

*McClintock v. Sch. Bd. E. Feliciana Parish*,
    299 F. App'x 363 (5th Cir. 2008) ................................................................10

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998) ...................................................................10

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ...................................................................15

*Powerhouse Prods., Inc. v. Widgery*,
    564 F. Supp. 2d 672 (E.D. Tex. 2008) ......................................................15

*Ray v. Lynass*,
    No. A-21-CV-00020-LY, 2021 WL 8443684 (W.D. Tex. Nov. 9, 2021) ...............8

*Roach v. Bloom*,
    No. 3:08-CV-439-L, 2009 WL 667218 (N.D. Tex. Mar. 16, 2009) .......................4

*Scrum All., Inc. v. Scrum, Inc.*,
    No. 4:20-CV-227, 2021 WL 1845154 (E.D. Tex. May 7, 2021) .........................10

*Sigoloff v. Austin*,
    No. 4:22-CV-00923-P, 2023 WL 2142982 (N.D. Tex. Feb. 21, 2023).......................4, 12, 15

*Stafford v. Briggs*,
    444 U.S. 527 (1980).........................................................................1, 9

*Tactacell, LLC v. Deer Mgmt. Sys., LLC*,
    No. 6:22-CV-00773, 2022 WL 3239196 (W.D. La. Aug. 10, 2022)................................10, 11

*Texas v. U.S. Dep't of Homeland Sec.*,
    No. 6:23-CV-00007, 2023 WL 2457480 (S.D. Tex. Mar. 10, 2023) (Tipton, J.).....................2

*Texas v. United States*,
    95 F. Supp. 3d 965 (N.D. Tex. 2015) (O'Connor, J.) ................................... *passim*

*Turentine v. FC Lebanon II LLC*,
    No. 3:22-cv-01625-M, 2022 WL 16951647 (N.D. Tex. Nov. 15, 2022) ...............................10

*Udeobong v. Hawkins*,
    No. CIV.A. H-08-1833, 2009 WL 7326072 (S.D. Tex. Feb. 19, 2009)
    (Ellison, J.) ...............................................................................1, 8

*Umphress v. Hall*,
    479 F. Supp. 3d 344 (N.D. Tex. 2020) (Pittman, J.)...................................... *passim*

*Utah v. Walsh*,
    No. 2:23-CV-016-Z, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023)
    (Kacsmaryk, J.) .......................................................................1, 14, 15, 16

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .........................................................3, 13, 14

*Woodfork v. Marine Cooks & Stewards Union*,
   642 F.2d 966 (5th Cir. 1981) ..................................................................9


**Statutes**

28 U.S.C. § 1391(a)(2)..............................................................................3

28 U.S.C. § 1391(b)..................................................................................3

28 U.S.C. § 1391(b)(2) ....................................................................... *passim*

28 U.S.C. § 1391(c)(2)..............................................................................6

28 U.S.C. § 1391(e)(1).........................................................................*passim*

28 U.S.C. § 1404(a) .............................................................................*passim*

28 U.S.C. § 1406(a) ..................................................................................3

28 U.S.C. § 2343.....................................................................................9


**Rules**

Fed. R. Civ. P. 12(b)(3).........................................................................3, 4


**Regulations**

34 C.F.R. § 685.300...............................................................................11


**Other Authorities**

Admin. Office of the U.S. Courts, *Table C-1—U.S. District Courts—Civil
   Statistical Tables for the Federal Judiciary* (Dec. 31, 2022) ...........................14, 15

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
   (4th ed. 2022)................................................................................4, 7, 15

*Moore's Federal Practice - Civil*..................................................................4

U.S. Dep't of Educ., *Federal School Code List of Participating Schools*
   (Feb. 2023)..........................................................................................15

iv

## INTRODUCTION

Courts in this circuit and across the country, including this Court, have held correctly that a challenge to an agency action can be brought in a district in which the action will impose its burdens. *See, e.g.*, *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (Pittman, J.) (state defendant); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.) (federal defendant); *Udeobong v. Hawkins*, No. CIV.A. H-08-1833, 2009 WL 7326072, at *2-3 (S.D. Tex. Feb. 19, 2009) (Ellison, J.) (state defendant, collecting cases across nation); *Farmland Dairies v. McGuire*, 771 F. Supp. 80, 82 (S.D.N.Y. 1991) (state defendant). Defendants do not cite, let alone distinguish, these precedents. *See* Defs.' Br. ii-iv (table of authorities).

Instead of engaging with relevant precedent, Defendants primarily argue that challenges to federal agency rulemaking should be brought in the District of Columbia. Congress flatly rejected this cramped notion of venue, instead providing that federal defendants may be sued *either* where they reside (usually in the District of Columbia), where the plaintiff resides, *or* where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1). As the Supreme Court has chronicled, § 1391(e) "ma[de] it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia." *Stafford v. Briggs*, 444 U.S. 527, 539 (1980) (citation omitted).

Defendants alternatively launch what is now a familiar attack on efforts by Texas plaintiffs to challenge federal overreach in the districts where they experience its burdens. Defendants claim (without evidence) that "the fair administration of justice would be harmed" if this Court hears this case. Defs.' Br. 18. Two courts in this circuit have rejected the same argument in the past month. *See Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *6 (N.D. Tex. Mar. 28, 2023) (Kacsmaryk, J.) (denying motion to transfer venue because "Defendants propose an unprecedented

1

and unworkable standard for motions to transfer that would turn Section 1404 analysis on its head"); *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480, at *8 (S.D. Tex. Mar. 10, 2023) (Tipton, J.) (denying motion to transfer venue where "[t]he Federal Defendants have not articulated how the administration of justice will be compromised if this case continues before this Court"). This Court should reject it as well.

## BACKGROUND

Plaintiff brought this action on behalf of career colleges and schools in Texas that participate in the Department of Education's Direct Loan Program ("participating schools"), including schools in the Northern District. *See* Compl. ¶¶ 14-21; App. to Certificate of Interested Parties, ECF No. 2-1. Both the Complaint and Plaintiff's motion for a preliminary injunction, including its accompanying declarations, describe how the Final Rule, if allowed to go into effect, will injure participating schools in the districts where they operate. For example, school staff located in this district will be required to ensure that their advertising and recruiting activities pose a minimal risk under the new strict-liability standard for misstatements and omissions. *See* Decl. of Nikki England ("England Decl.") ¶¶ 6, 19-23 [App. 2, 4-5]; Decl. of Scott Shaw ("Shaw Decl.") ¶¶ 7-10, 20 [App. 10-13]. The reputational harms caused by the Final Rule will also hurt schools' ability to recruit students in their districts. *See* Shaw Decl. ¶ 26 [App. 14]. These are just two examples of the burdens that the Final Rule imposes on schools in this district.

## ARGUMENT

Venue is proper in the Northern District of Texas because, as this Court and others in this circuit have held, "a substantial part of the events or omissions giving rise to the claim[s]" take place where an unlawful rule imposes its burdens. *See, e.g.*, *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (Pittman, J.); *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D.

Tex. 2015) (O'Connor, J.). Transfer under Federal Rule of Civil Procedure 12(b)(3) is therefore unavailable. *See also* 28 U.S.C. § 1406(a).

Nor is a discretionary transfer appropriate under 28 U.S.C. § 1404(a). Defendants have not met their burden to show that litigating in the District of Columbia or the Western District of Texas would be "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Plaintiff's choice of venue should therefore be respected. *Id.*

## I.   Venue is proper in the Northern District of Texas.

Venue in actions against the Department of Education ("Department") and the Secretary of Education is governed by 28 U.S.C. § 1391(e)(1), the general venue provision for suits against federal agencies and federal officers acting in their official capacities. Under that provision, venue is proper

> in any judicial district in which
>
> (A) a defendant in the action resides,
>
> (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1) (paragraph breaks added).

The second option—where "a substantial part of the events or omissions giving rise to the claim occurred"—is sometimes called "transactional venue." *See, e.g.*, *Int'l Cotton Mktg., Inc. v. Commodity Credit Corp.*, No. 5:08-CV-159-C, 2009 WL 10705345, at \*2, \*3 (N.D. Tex. Feb. 4, 2009) (identifying the same language in the former 28 U.S.C. § 1391(a)(2) as providing "transactional venue"). There is an identical transactional-venue provision in § 1391(b), the subsection that provides venue in civil cases against non-federal defendants. *See* 28 U.S.C. § 1391(b)(2). Because they are identical, cases interpreting one inform the interpretation of the

3

other. *See Andrade v. Chojnacki*, 934 F. Supp. 817, 825 n.13 (S.D. Tex. 1996); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning.").

Although the Fifth Circuit has not decided which party bears the burden on a Rule 12(b)(3) issue, and cases in this district are split, "the better rule is one that places the burden on the movant" because improper venue "is used as an affirmative defense" and "the burden of establishing an affirmative defense rests with the party asserting it." *Roach v. Bloom*, No. 3:08-CV-439-L, 2009 WL 667218, at *2, *7 (N.D. Tex. Mar. 16, 2009); *see also* 2 *Moore's Federal Practice - Civil* § 12.32 ("When the court determines venue as a fact issue, the better view is that the party challenging venue has the burden of proving its impropriety."). *But see Sigoloff v. Austin*, No. 4:22-CV-00923-P, 2023 WL 2142982, at *1 (N.D. Tex. Feb. 21, 2023) (citing *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003)) (finding that a plaintiff has the burden to prove proper venue once a defendant raises the issue, but citing a case that held that defendant had the burden).

Here, regardless of who bears the burden, transactional venue is proper in the Northern District of Texas because, as this Court and others have held, "a substantial part of the events or omissions giving rise to the claim[s]" take place where an unlawful rule imposes its burdens. Defendants' arguments simply ignore this precedent.

## A.    Venue is proper where a regulatory action imposes its burdens.

Courts in this circuit, including this Court, have held that the transactional-venue provision in § 1391(e)(1), and the identical provision in § 1391(b)(2), allow a plaintiff to challenge government actions in a district where the action imposes its burdens, even if neither the plaintiff

nor any defendant resides there. *See Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.) (finding transactional venue proper under § 1391(e)(1)), *injunction dissolved on other grounds*, 2015 WL 13424776 (N.D. Tex. June 26, 2015); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (Pittman, J.) (same under § 1391(b)(2)).

In *Umphress*, the plaintiff was a state judge who sought declaratory and injunctive relief against the Texas State Commission on Judicial Conduct, which he believed would discipline him for refusing to perform same-sex marriages for religious reasons. 479 F. Supp. 3d at 347. This Court held that transactional venue was proper under § 1391(b)(2) because the "traditional weddings he has officiated coupled with his refusal to officiate same-sex weddings and church membership and attendance . . . all occurred in this district." *Id.* at 352.

Similarly, in *Texas v. United States*, a challenge to a Department of Labor rulemaking regulating employment, Judge O'Connor held that venue was proper under the transactional-venue provision because one of the plaintiffs employed people in the district: "Because Plaintiff Texas and its agencies are employers in Wichita Falls, a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the Final Rule to become effective. Therefore, venue is proper in this district." 95 F. Supp. 3d at 973.

The same reasoning supports venue here. Among other things, schools in this district teach students, maintain records, train staff, receive Title IV funds, advertise, and recruit new students. *See* England Decl. ¶¶ 6, 19-23 [App. 2, 4-5]; Shaw Decl. ¶¶ 7-12, 20-21, 26 [App. 10-14]. These activities, and the burdens imposed on them by the Final Rule, are central to the claims that CCST has brought on their behalf.

5

The declarations supporting CCST's motion for a preliminary injunction further explain how the Final Rule will impose the following burdens (among others) on CCST's participating member schools in this district:

- School staff located in the district will be required to undergo training to comply with the Final Rule's new requirements. *See* Shaw Decl. ¶ 20 [App. 12-13]; England Decl. ¶ 21 [App. 4-5].

- School staff located in the district will be required to expand their record-keeping significantly in light of the Final Rule's effective removal of the limitations period on new discharge claims. *See* Shaw Decl. ¶ 20 [App. 12-13]; England Decl. ¶ 21 [App. 4-5].

- School staff and contractors will be required to ensure that their advertising and recruiting activities in the district pose a minimal risk under the new strict-liability standard for misstatements and omissions. *See* Shaw Decl. ¶ 20 [App. 12-13]; England Decl. ¶ 21 [App. 4-5].

- Contracts executed with students in the district will no longer be allowed to include pre-dispute arbitration provisions or class-action waivers. *See* England Decl. ¶¶ 14, 15 [App. 3-4].

- The Department's unlawful recoupment proceedings deprive schools in this district of their right to litigate their liability to a jury in a federal district court, likely in the Northern District. *See* 28 U.S.C. § 1391(b)(2), (c)(2) (entitling corporate civil defendants to venue in the district where their principal place of business is located or where "a substantial part of the events or omissions giving rise to the claim occurred").

- The reputational harms caused by a discharge or recoupment proceeding brought under the Final Rule's new standards will be suffered in the district where the school recruits students and where the school's alumni are likely to seek employment. *See* Shaw Decl. ¶ 26 [App. 14]; England Decl. ¶ 21 [App. 4-5].

- Schools will be constrained in their ability to close facilities or consolidate or end program offerings in the district for fear that the Department will consider it a "closed school" and impose presumptive liability on the school under the Final Rule. *See* Shaw Decl. ¶ 17 [App. 12]; England Decl. ¶ 24 [App. 5].

The CCST member schools in this district that would suffer these burdens include Lincoln Technical Institute in Grand Prairie, located in Tarrant County, and others. *See* Shaw Decl. ¶¶ 7-10 [App. 10-11]; England Decl. ¶¶ 19-21 [App. 4-5]. These burdens are enough to establish proper transactional venue in this district.

### B.   Defendants' arguments lack merit.

Wholly ignoring *Umphress* and *Texas v. United States*, Defendants challenge transactional venue on several grounds, none of which are persuasive. *See* Defs.' Br. 9-15.

*First*, citing no authority, Defendants fault the Complaint for "fail[ing] to allege that any material events or omissions giving rise to CCST's claims (much less a substantial part of them) actually occurred in this District." Defs.' Br. 9. To the contrary, CCST alleges that the Final Rule will harm CCST's member schools in this district. *See* Compl. ¶¶ 14, 18-21. But even if Defendants were correct, it is well-established that "the plaintiff is not required to include [in the complaint] allegations showing that venue is proper." 14D Wright & Miller, *supra*, § 3826. This is because improper venue is an affirmative defense, and a plaintiff has no duty to counter affirmative defenses in the complaint. *See Nobre ex rel. K.M.C. v. La. Dep't of Pub. Safety*, 935

7

F.3d 437, 442 (5th Cir. 2019) ("A plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint."). In resolving this motion, the Court is not limited to the Complaint, but can consider undisputed facts proffered by the parties. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

*Second*, Defendants argue that, in challenges to agency rulemaking, especially pre-enforcement challenges, transactional venue is only proper in the district where the agency decided and promulgated the rule—that is, in the District of Columbia. Defs.' Br. 9-10. On their reading, only the district where the *defendant's* conduct takes place is relevant, and neither the location of a plaintiff's activities nor the place where burdens are imposed on a plaintiff can be considered. *See id.* 11-15.

Courts in this circuit, including this Court, have flatly rejected this reading. *See Umphress*, 479 F. Supp. 3d at 352 (holding, in a pre-enforcement challenge, that "the Court [may] consider more than just Defendants' conduct with regard to the events and omissions at issue in this case. That is, the Court may also consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Ray v. Lynass*, No. A-21-CV-00020-LY, 2021 WL 8443684, at *6 (W.D. Tex. Nov. 9, 2021) (R. & R.) ("Courts may now consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Udeobong v. Hawkins*, No. H-08-1833, 2009 WL 7326072, at *2-3 (S.D. Tex. Feb. 19, 2009) (finding proper transactional venue based on the challenged state regulations' effects on the plaintiff's business activities in the district, the agency's notice being mailed to the plaintiff in the district, and omitted payments being owed to plaintiff in the district); *accord Texas v. United States*, 95 F. Supp. 3d at 973.

And for good reason. In 1962, Congress enacted § 1391(e) to allow plaintiffs to challenge agency actions *without* having to litigate in the District of Columbia. *See Stafford v. Briggs*, 444 U.S. 527, 539-40 (1980). To that end, plaintiffs have the option to sue where a federal defendant officially resides (usually in D.C.), where the plaintiff resides, *or* where "a substantial part of the events or omissions giving rise to the claim[s]" would take place. 28 U.S.C. § 1391(e)(1). If, as Defendants argue, a "substantial part" of an unlawful rulemaking only takes place where the agency resides, then the distinction between the residency and transactional provisions would be meaningless. "A basic principle of statutory construction is that 'a statute should not be construed in such a way as to render certain provisions superfluous or insignificant.'" *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970-71 (5th Cir. 1981) (citation omitted). Defendants appear to endorse this logic elsewhere in their brief. *See* Defs.' Br. 13 ("If the economic effects of a defendant's actions, standing alone, could establish venue in a particular district, there would have been little reason for Congress to distinguish between venue at a plaintiff's residence and venue where a claim arises."). Indeed, if Congress had wanted to provide venue based only on residence, it knew how to do so—and has done so in other statutes. *See, e.g.*, 28 U.S.C. § 2343 (providing venue to review actions of other federal agencies "in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit").

Defendants' reading would also defy Congress's liberalization of transactional venue. In 1990, Congress amended § 1391, adding the "substantial part" language to allow plaintiffs to bring actions in more districts. *See Umphress*, 479 F. Supp. 3d at 351. "Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." *Id.* (quoting *Globe Glass & Mirror Co. v. Brown*, 888 F.

Supp. 768, 770 (E.D. La. 1995)). "The venue in which a plaintiff files suit 'does not have to be the place where the most relevant events took place,' so long as a 'substantial' part of the events or omissions giving rise to the claims transpired there." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 1845154, at *3 (E.D. Tex. May 7, 2021) (quoting *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008)). That includes places where an unlawful regulation imposes burdens on regulated parties. *See Texas v. United States*, 95 F. Supp. 3d at 973.

Defendants' cited authority is not to the contrary. The court in *Turentine* noted simply that the defendant's discriminatory conduct—as opposed to the plaintiff's subsequent residence—was the relevant factor in assessing venue in that discrimination case under § 1391(b)(2). *Turentine v. FC Lebanon II LLC*, No. 3:22-cv-01625-M, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022). The court did not hold that the defendant's conduct was the *only* permissible basis for venue—a reading that would also exclude the defendant's residence. *Contra* Defs.' Br. 11. In *Garcia v. Acosta*, 393 F. Supp. 3d 93, 109 (D.D.C. 2019), the court declined to transfer a case to another district when the only connection to the transferee district was a processing center from which the agency mailed letters. And *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998), says merely that D.C. is more readily available as a venue for APA challenges, presumably because most agencies reside there.

Far from supporting Defendants' cramped reading, the court's decision in *Tactacell* shows why transactional venue is proper here. *See Tactacell, LLC v. Deer Mgmt. Sys., LLC*, No. 6:22-CV-00773, 2022 WL 3239196, at *3 (W.D. La. Aug. 10, 2022). The court there found that transactional venue was proper in a breach-of-contract suit "because [the district] is a location where the parties anticipated the performance of the Agreement would take place." *Id.* (citing *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981)). Similarly, here, participating

10

schools perform contracts with the Department in the districts where they operate, and the regulation of those contracts—and the new conditions placed on them—affect their anticipated performance in those districts as well. *See* 34 C.F.R. § 685.300(a)(2) (requiring that participating schools "[e]nter into a written program participation agreement with the Secretary"); *id.* § 685.300(b) (describing participating schools' obligations under their program participation agreements). In other words, *Tactacell* lends support to what should be an unremarkable proposition—that the places where unlawful regulations burden regulated parties "bear a close nexus" to claims challenging those regulations on those parties' behalf. *Id.* (citation omitted).

Nor is there a basis for treating pre-enforcement challenges any differently from post-enforcement challenges under § 1391, especially when the harms of anticipated regulations have already begun to accrue. *See* Shaw Decl. ¶ 20 [App. 12-13] (describing injuries already suffered by a CCST school in this district as a result of the promulgation of the Final Rule). Indeed, courts in this district have not distinguished between pre- and post-enforcement challenges when deciding proper venue. *See Umphress*, 479 F. Supp. 3d at 352 (pre-enforcement challenge); *Texas v. United States*, 95 F. Supp. 3d at 973 (same).

*Experian*, cited by Defendants, is not to the contrary. The Magistrate Judge in that case found that transactional venue was not proper in the district where a consent order in an earlier suit was entered. *Experian Info. Sols., Inc. v. F.T.C.*, No. 3:00-CV-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001). But that was not because, as Defendants suggest, "[the] plaintiff's claim involved a pure question of law about an agency rule rather than any enforcement action taken within the district." Defs.' Br. 10. Rather, it was because the consent order was irrelevant to that question of law: "[P]laintiff seeks a declaration that the new rule promulgated by the FTC is arbitrary and capricious and infringes on its First and Fifth Amendment rights. No portion of the

consent order is implicated in making such a determination." *Experian*, 2001 WL 257834, at *3 (citations omitted). By contrast, the burdens imposed on a regulated party by unlawful regulations are not irrelevant to an action challenging those regulations—they are central to them. That is true regardless of whether the action is brought before or after an agency enforcement action.

*Finally*, Defendants take issue with the fact that CCST brings this action on behalf of member schools in this district who are not named plaintiffs. *See* Defs.' Br. 12, 14. But transactional venue depends on "the events or omissions giving rise to the claim," not on the identity of the named parties. Defendants do not suggest that CCST lacks standing or a cause of action. Nor do they point to any statutory text that indicates an association is subject to different transactional-venue requirements than its members would be. *Sigoloff*, which Defendants cite as their primary authority for this argument, does not address this question, but rather stands for the proposition that transactional venue requires a link between events or omissions in the district and the claims at issue. (There, the physician plaintiff and the government defendants did not reside in the district and the physician did not assert that he had ever practiced medicine there.) *See* 2023 WL 2142982, at *1-2. That CCST has brought claims on its members' behalf does not make its members' injuries in this district any less pertinent to those claims.

In a footnote, Defendants cite precedent regarding venue requirements in class actions. Defs.' Br. 12 n.2. Reliance on these cases is misplaced. Unlike class representatives, associations generally do not bring the same claims on their own behalf and can only borrow transactional venue from their members' claims. Requiring an association to establish transactional venue based only on claims brought on its own behalf would effectively eliminate transactional venue in a case brought on behalf of its members. There is no basis in § 1391 for requiring such a rule, and the Court should decline Defendants' invitation to write one.

## II.     Transfer for convenience under § 1404(a) is unwarranted.

Defendants request, in the alternative, that the Court exercise its discretion and transfer this case to the District of Columbia or the Western District of Texas for the convenience of the parties. *See* 28 U.S.C. § 1404(a). To succeed on a motion to transfer under § 1404(a), it is incumbent on the defendant to "satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.' Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)). "When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022).

"Courts are required to assess four private interest factors and four public interest factors pertinent to a transfer motion." *Id.*

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors bearing on transfer are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* at 433-35 (quoting *Volkswagen*, 545 F.3d at 315) (second alteration in original). When a defendant argues that access to evidence or witnesses would be more convenient in a different

district, the defendant must identify that evidence or those witnesses with specificity. *Id.* at 434. Crediting conclusory assertions is an abuse of discretion. *Id.*

Here, Defendants have not shown that either the District of Columbia or the Western District of Texas would be "clearly more convenient" than the Northern District of Texas. *Volkswagen*, 545 F.3d at 315. They have thus failed to meet their burden, and CCST's choice of venue "should be respected." *Id.*; *see also Def. Distributed*, 30 F.4th at 433.

Defendants make no reference to any specific private-interest factor, noting simply that "[t]he Final Rule was developed and promulgated in Washington, D.C., each of the Defendants resides there, and the administrative record will be compiled there." Defs.' Br. 17. But these circumstances are not determinative in this APA case, which, barring unforeseen developments, involves questions of law to be resolved on the administrative record, requiring little or no merits discovery or live testimony. Regardless, Defendants have made no effort to specify what evidence or witness testimony would be difficult to secure in this district, and their conclusory allusions to inconvenience should not be credited. *Def. Distributed*, 30 F.4th at 433.

On the public-interest factors, Defendants reference this district's docket volume and the District of Columbia's supposed local interest in adjudicating this case. Defs.' Br. 17-18.

Regarding the district's docket, "Defendants have not attempted to identify any appreciable difference in docket congestion between the [three districts]." *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *4 (N.D. Tex. Mar. 28, 2023). While this district's docket is busy, its caseloads are not appreciably different from those in Defendants' preferred venues. The most recent statistics show more pending cases in the District of Columbia (4,564) than in this district (4,166) for a comparable number of judges in active service. *See* Admin. Office of the U.S. Courts, *Table C-1—U.S. District Courts—Civil Statistical Tables for the Federal Judiciary* (Dec. 31,

2022), https://www.uscourts.gov/file/63270/download. The Western District of Texas is similar (4,022 pending cases). *Id.* This district has proven capable of managing its dockets efficiently and disposing of cases quickly, terminating more civil cases in 2022 than any other district court in the country except three. *Id.* Regardless, a district's docket volume, on its own, "is not an appropriate factor on a motion to transfer under Section 1404(a)." 15 Wright & Miller, *supra*, § 3854; *see also Powerhouse Prods., Inc. v. Widgery*, 564 F. Supp. 2d 672, 682 (E.D. Tex. 2008) (declining to give any weight to relative caseloads). This factor is neutral at best.

Regarding the District of Columbia's "local interest in having localized interests decided at home," Defendants argue that this case presents such interests because Defendants' offices are located in Washington, D.C. Defs.' Br. 17. That reasoning may have made sense in *Sigoloff*, on which Defendants rely, because that case involved a private employment dispute with a federal agency. 2023 WL 2142982, at *1. But it makes little sense in a challenge to a nationwide policy that will apply to schools and affect students and communities across the country, including in this district. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (affirming denial of intra-state transfer in part because the allegations had statewide scope and did not implicate localized interests); *Utah*, 2023 WL 2663256, at *4 (citation omitted) ("Where parties 'are located across the state and across the country,' this is not the sort of 'localized case' where the citizens of Washington, D.C. have a greater 'stake' in the litigation than the residents of Amarillo.").

If anything, this district has a greater stake in this litigation than does the District of Columbia. According to the Department's statistics, 28 schools in the District of Columbia participate in Title IV programs, which is less than half the number of participating schools in this district. *See* U.S. Dep't of Educ., *2023-24 Federal School Code List of Participating Schools* (Feb.

15

2023), https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-02-01/2023-24-federal-school-code-list-participating-schools-february-2023. This factor weighs against transfer.

Finally, Defendants argue that, under the "interest of justice" language in § 1404(a), a case should be transferred if it has "strong indicia of forum-shopping," even if venue is otherwise proper and convenient. Defs.' Br. 18. Another judge in this district recently rejected the same argument in another case against a federal agency:

> [T]he "interest of justice" analysis referenced in Section 1404(a) is already encompassed in the public interest factors that courts consider under existing precedent. . . . [T]he Court need not weigh in on the merits of Defendants' judge-shopping argument or create new law to address it. Defendants fail to cite a single case that granted transfer under Section 1404 based on this argument. . . . Section 1404 does not require the Court to guess as to Plaintiffs' subjective motivations for choosing the forum.

*Utah v. Walsh*, 2023 WL 2663256, at *5-6 (Kacsmaryk, J.).

The same applies here. Defendants do not cite a single authority indicating that perceived forum shopping justifies transfer under § 1404. Defendants' preference for litigating in the District of Columbia, and their disappointment with Plaintiff's choice of venue, is not a basis for transfer when venue is proper and convenient in this district—particularly when, as discussed above, the rights of schools in this district are directly infringed by the regulations at issue in this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

16

Dated:  April 7, 2023

Respectfully submitted,

  /s/ Allyson B. Baker
Allyson B. Baker (*pro hac vice*)
Meredith L. Boylan (*pro hac vice*)
Stephen B. Kinnaird (*pro hac vice*)
Michael Murray (*pro hac vice*)
Sameer P. Sheikh (*pro hac vice*)
Tor Tarantola (*pro hac vice* forthcoming)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20037
allysonbaker@paulhastings.com
(202)-551-1830


  /s/ Philip Vickers
Philip Vickers
 Texas Bar No. 24051699
Katherine Hancock
 Texas Bar No. 24106048
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system on April 7, 2023.


  /s/ Allyson B. Baker
Allyson B. Baker

17